## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK STATE VEGETABLE GROWERS ASSOCIATION, INC. and NORTHEAST DAIRY PRODUCERS ASSOCIATION, INC. | Case No. _____ Date: 12/30/19 |
| Plaintiffs, | |
| v. | |
| ANDREW CUOMO, in his official capacity as Governor of New York, LETITIA JAMES, in her official capacity as Attorney General of New York, and ROBERTA REARDON, in her official capacity as Commissioner of the New York Department of Labor, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

Plaintiffs New York State Vegetable Growers Association, Inc. (NYSVGA) and

Northeast Dairy Producers Association, Inc. (NEDPA) hereby complain against

Defendants Andrew Cuomo, in his official capacity as Governor of New York, Letitia

James, in her official capacity as Attorney General of New York, and Roberta Reardon,

in her official capacity as Commissioner of the New York Department of Labor, and

allege as follows:

### Nature of the Action

1.  Plaintiffs bring this action to stay enforcement of the Farm Laborers Fair Labor

Practices Act (the "Act"), a law which will grant farm laborers the rights to collective

bargaining, certain hours of work, and overtime pay starting on January 1, 2020. As detailed below, the Act is void on its face and violates the 14th Amendment because it is contradictory to such a degree that Plaintiffs and their member farms will be unable to comply with its demands on day one. The Act is also preempted by federal law.

2.   Historically, agricultural workers have been excluded from the National Labor Relations Act (NLRA) as well as the overtime pay provisions of the federal Fair Labor Standards Act (FLSA). The Act purports to change that and grant these rights to agricultural workers. *See* 2019 N.Y. Sess. Laws ch. 105, § 2(2).

3.   While the Act purports to help agricultural workers, the harsh economic impact on farms, particularly small farms, will undoubtedly harm these workers in many respects. As noted by one farm publication, "the impact on farmworkers could be mixed. While some workers may benefit from increased earnings, other workers may find their hours reduced as a result of employers trying to manage their increased costs. Wages are just one component of total compensation and ag employers may manage costs by cutting back other benefits, including health insurance, profit sharing, housing or food allowances." *See* Farm Credit Overtime, *The Economic Impact of Mandatory Overtime Pay for New York State Agriculture* (Feb. 2019).

4.   Plaintiffs have voiced a series of concerns regarding the Act's extreme and potentially ruinous economic impact on their businesses (which in turn will leave thousands of agricultural workers out of work). Despite hollow efforts to minimize the Act's adverse impacts, those concerns not only remain, they have only been heightened as the Act's implementation date approaches.

5.   There is a particular – and fundamental – flaw in the Act that unfortunately requires immediate court intervention to block it now. Specifically, section 3 of the Act, addressing unions, defines "farm laborer" as "any individual engaged or permitted by an employer to work on a farm, except the parent, spouse, child, or other member of the employer's immediate family." 2019 N.Y. Sess. Laws § 3 (creating N.Y. Labor Law § 701(3)(c)). Thus, by the Act's express terms, coverage extends to farm owners and their extended family, as well as to salaried supervisors, executives, administrative, and professional employees.

6.   The Act also defines "farm labor" under its wage provisions (but not farm laborer). The Act defines "farm labor" as all services performed in agricultural employment in connection with cultivating soil, or in connection with raising or harvesting agricultural commodities, including raising, shearing, caring for and management of livestock.  2019 N.Y. Sess. Laws ch. 105, § 4 (amending N.Y. Labor Law § 161. The "connection with" language is similarly broad as the language in section 3 of the Act.

7.   This is problematic and unworkable for a host of reasons. For example, employers are obligated by the law to instruct their supervisory employees not to engage in certain activities that would be unduly influential (one way or the other) to those workers' rights to engage in concerted activity. *See* 2019 N.Y. Sess. Laws ch. 105, § 19. But if supervisors are covered by the Act (and they are not excluded under § 701(3)(c)), farms are prohibited from interfering with their rights to communicate with other workers regarding unions. This creates an unworkable Catch 22, imposing on

3

farms an obligation to engage in conduct that would violate other provisions of the Act
and thereby creating conflicting prohibitions that cannot be reconciled.

8.   The same concern exists regarding family members of owners and part owners of
farms, where communications could constitute interference with concerted activities,
yet the farms may be restricted from acting to deter those communications. Indeed,
farms routinely employ nieces and nephews or other family members, and those
individuals may have rights to the farm through estate planning or simply family
relationships that earn ownership through "sweat equity" or through earned
opportunity to buy into the business. The Act's language in this respect therefore
makes compliance impossible because it flouts the reality of family relations on farms.
Farms must know which family members to restrict from involvement in activities that
could unduly influence concerted activity.

9.   Another example of the problematic and unworkable nature of the Act is its
failure to limit its coverage to just workers and, therefore, includes owners, extended
family, supervisors, executives and administrative employees. These omissions will
irreparably damage employee relations, because previously salaried workers will be
demoted, and required to be paid on an hourly basis, with restrictions on the hours of
work applicable to them.

10. The Act has yet another inherent, unworkable contradiction:  Specifically, 2019
N.Y. Sess. Laws ch. 105, § 18 (amending N.Y. Labor Law § 703), expressly prohibits
strikes, but N.Y. Lab. Law § 713 says that "[n]othing in this Article shall be construed
so as to interfere with, impede or diminish in any way the right of employees to strike .

. . ."  How are member farms supposed to instruct their supervisors and workers regarding their rights in light of such conflicting guidance?

11. Finally, the Act's apparent inclusion of supervisors as part of the pool of hourly workers who may engage in concerted activities should be stricken because it directly flouts federal law, specifically, the NLRA, which expressly prohibits such activity and participation.

12. In sum, while the intent of the legislation was to provide "basic labor protections and the right to collective bargaining that almost all other private sector workers enjoy," the Act is rife with unclear and contradictory provisions that make it impossible for farms and workers alike to understand and follow its dictates. These ambiguities and contradictions must be resolved before it can take effect.

13. For these reasons and as detailed below, the Court should declare the Act unconstitutional on its face and enjoin Defendants from enforcing its provisions.

**Parties**

14. Plaintiff NYSVGA is one of the oldest agricultural organizations in New York. Founded in 1911, the association is a not-for-profit corporation that serves commercial fresh market, storage, and processing vegetable growers. NYSVA's members consist of farm growers of varying sizes. It is guided by a fifteen member Board of Directors who represent the major commodities produced throughout the State. NYSVGA plays a vital role in educating members and helping them to comply with laws to remain competitive in a commodity based market that trades internationally.

5

15. Plaintiff NEDPA was established in 1993 to give northeast dairy producers a united voice in important issues that have emerged on the dairy horizon, as well as helping member farms with specific regulatory and compliance challenges on their own farms. NEDPA member farms range in size from 100 cows to over 5,000. NEDPA members manage over 187,000 cows and create a major economic impact in the State.

16. Defendant Andrew Cuomo is the current Governor of New York and has, among many responsibilities, the authority to sign into law bills laws tendered by the New York Legislature and to oversee enforcement and administration of those laws. Governor Cuomo signed the Act into law on July 17, 2019. He maintains his principal place of business in the State Capitol Building in Albany, New York, and he oversees offices located throughout the State.

17. Defendant Letitia James is the Attorney General of New York, the State's chief legal officer. As part of her duties, Attorney General James oversees the Labor Bureau, which investigates violations of minimum wage, overtime, prevailing wage, and other basic labor laws throughout the State and brings civil and criminal actions against employers who violate these laws. She maintains her principal place of business in the State Capitol Building in Albany, New York, and she oversees offices located throughout the State.

18. Defendant Roberta Reardon is Commissioner of the New York Department of Labor and is head of the State agency responsible for administering and enforcing State labor laws and regulations, including the Act. She maintains her principal place of

business in the State Campus Building in Albany, New York, and she oversees offices located throughout the State.

19. All defendants are being sued in their official capacities.

## Jurisdiction, Venue, and Standing

20. This Court has jurisdiction over Plaintiffs' claims pursuant to the United States Constitution, art.III, § 2 and art. VI, clause 2, as well as 28 U.S.C. § 1331 because they arise under the 14th Amendment of the Constitution.

21. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the acts and omission that gave rise to Plaintiffs' claims occurred in this judicial district. Plaintiffs reside in this judicial district and the Act's requirements will be felt in this judicial district.

22. Plaintiffs NYSVGA and NEDPA each have organizational standing to bring this suit on their own behalf because they (i) face an imminent "injury in fact" to themselves as organizations that is "distinct and palpable"; (ii) the injury is "fairly traceable" to enforcement of the challenged law; and (iii) a favorable decision would redress their injuries. *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quoting *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

23. Specifically, as a result of the Act, both NYSVGA and NEDPA have been forced to devote substantial resources and time to both (i) educate and counsel their members about how to comply with the Act, and (ii) pursue clarification and relief from the State regarding the Act's contradictory terms and requirements. The time, money, and effort

expended has been considerable, including Roadshows throughout the State, and will only be exacerbated once Plaintiffs' members are subjected to the Act's requirements and penalties. The time and money Plaintiffs have spent – and will be spending – helping their members understand the Act has prevented – and will continue to prevent – them from spending those same time and resources assisting their other members with other matters and concerns. (*See* Declaration of Jon Greenwood [Exhibit 18] and Declaration of Brian Reeves [Exhibit 19].) For example, New York Farm Bureau recently reported that New York Farms have experienced a $1,000,000,000 drop in the value of what was produced since 2014. NEDPA's time and resources have been diverted to counseling members on the unworkable and contradictory new law, rather than focusing on this important challenge. (Declaration of Jon Greenwood [Exhibit 18], ¶15.)

24. The passing of the Act has impeded each Plaintiff's ability to carry out its responsibilities, and the time and resources expended by Plaintiffs (and diverted from Plaintiffs' other activities) constitutes cognizable organizational injury. *See Centro de la Comunidad Hispana*, 868 F.3d at 110 ("[O]nly a perceptible impairment of an organization's activities is necessary for there to be an injury in fact."); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Nnebe v. Daus*, 644 F.3d 147, 156-57 (2d Cir. 2011).  Awarding Plaintiffs the relief sought herein would redress these harms and prevent them from continuing.

25. Plaintiffs also have associational standing to sue on behalf of their members because their members would otherwise have standing to sue in their own right, the

interests at stake are germane to the Plaintiffs' purpose as described above, and neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit. *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 104 (2d Cir. 2018).

26. Plaintiffs' members are directly subject to (and regulated by) the Act's requirements, and will suffer irreparable injury from the Act's implementation on January 1, 2020.  For example, Adirondack Farms, a member of both NYSVGA and NEDPA, will be required to reclassify salaried members of its farm management team to hourly workers and pay them overtime, demand that they record all time worked including time on the telephone, and evening hours discussing farm business, thus unworkably changing its business structure and impacting productivity.  (Declaration of Jon Rulfs [Exhibit 14].) Likewise, in consideration of the criminal penalties imposed by the new law for failure to pay for all hours and overtime, Adironrack Farms will be forced to require salaried employees to punch a time clock, which will be destructive to teamwork among management. (*Id.*, ¶ 7.) Finally, due to the lack of clarity regarding whether the new law prohibits employers from discouraging concerted activity by supervisors, managers, part owners, extended family members, professional employees or administrative employees, Adironrack Farms is unsure how to direct employees to assure compliance with the law without interfering with the rights of those employees. (*Id.*, ¶ 8.)   Plaintiffs' other members face similar imminent injury. (*See* Declaration of Cole Carter [Exhibit 15]; Declaration of John Carter [Exhibit 16]; Declaration of Shannon Carter [Exhibit 17]; Declaration of Paul Colgan [Exhibit 20];

Declaration of Jon Patterson [Exhibit 21]; Declaration of Dan Young [Exhibit 22];

Declaration of Mark Henry [Exhibit 23]; Declaration of Wendell Ireland [Exhibit 24];

Declaration of Ryan O'Gorman [Exhibit 25].)

## Factual Background

### The NLRA and FLSA

27. Passed in 1935, the NLRA (originally known as the Wagner Act), afforded

workers the right to bargain collectively with their employers over wages, hours, and

other terms and conditions of employment. While the NLRA applied to "employees"

in general, it excluded agricultural workers (and other categories of workers) from the

provision of these rights. The agricultural worker exemption remains to this day.

28. In addition to excluding agricultural employees, the NLRA also excludes

supervisors from the definition of employees. Specifically, section 2 expressly excludes

supervisors from the definition of "employee" and section 14(a) exempts employers

from the duty to consider supervisors as employees under any law related to collective

bargaining. *See* 29 U.S.C. §§ 152(3) and (11).

29. The task of identifying supervisors has been described as an "aging but . . .

persistently vexing problem." *NLRB v. Security Guard Serv., Inc.*, 384 F.2d 143, 145 (5th

Cir. 1967). "Undoubtedly it is an important function:  Whether a person enjoys

supervisory status will determine, among other matters, that person's right to vote in a

union election, entitlement to Section 7 Rights [to engage in concerted activities], and

ability to bind the employer by statements and actions." *See The Developing Labor Law* §

27. III.C.2.a (7th ed. 2019).

30. For a time, federal labor laws permitted supervisors to form their own union. But that law was abrogated in the 1947 Amendments to the NLRA. Now the National Labor Relations Board lacks authority either to include supervisors in bargaining units with other employees or to establish units composed entirely of supervisory personnel. Nor can states extend collective bargaining rights to supervisors. *See Beasley v. Food Fair of N.C. Inc.*, 416 U.S. 653 (1974).

31. Passed in 1938, the FLSA is the federal law that sets minimum wage, overtime, recordkeeping, and youth employment standards for most industries, including agriculture. Agricultural employees are exempt from the Act's overtime pay provisions. Specifically, "any employee employed in agriculture" is excluded from maximum hour requirements under 29 U.S.C. § 213(b)(12).

32. The FLSA also excludes (from both minimum wage and overtime pay requirements), employees classified as *bona fide* executive, administrative, professional and outside sales employees. An exempt executive employee is one who must customarily and regularly direct the work of at least two or more other full time employees; have the authority to hire or fire employees (or make suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees); and generally have managerial duties. *See* 29 U.S.C. § 213(a)(1). To be exempt from the maximum hours or overtime provisions of the law, the exempt employee must be paid on a salary basis. 29 C.F.R. § 541.

*The Act*

33. On July 17, 2019, the New York State Legislature passed the Farm Labor Fair Labor Practices Act (the "Act"). *See* 2019 N.Y. Sess. Laws ch. 105. The Legislature stated its finding "that agriculture is one of New York's leading and most important industries, resulting in over $5 billion annually and making New York a global leader in many crops and agricultural products." 2019 N.Y. Sess. Laws ch. 105, § 2(1). The Legislature also found that "98% of New York's farms are family owned and these farms contributed $2.4 billion to the state's GDP in 2017." *Id.*

34. The Legislature also found that the success of New York's robust agricultural industry is due to "collaborative work between farmers and farm laborers." *Id.* § 2(2).

35. The Legislature recognized further that "farm laborers are one of the few classes of employees that are not covered by the Federal Fair Labor Standards Act or the National Labor Relations Act, denying these valuable employees the same basic labor protections and the right to collective bargaining that almost all other private sector workers enjoy." *Id.*

36. At the same time, the Act purports to acknowledge the challenges faced by the New York agricultural history:

> [T]his industry is subject to unique and unpredictable factors including climate, weather, pricing and market requirements, seasonal harvests, immigration, and various federal and state laws, rules and regulations that directly impact farmers and require a unique balance and application of traditional labor protections to ensure farm laborers have a voice in their own terms and conditions of employment and access to basic labor protections while also creating adaptability and responsiveness to the unique circumstances of farm operations.

*Id.* § 2(3).

37. Among other things, the Act (i) mandates that farm laborers be given one day of rest in every calendar week, *id.* § 4; (ii); prohibits farms from requiring any employee to work more than 60 hours in any calendar week, *id.* § 6; and (iii) provides that farms may permit farm laborers to work more than 60 hours, but must pay overtime at the hourly rate of 1.5 times the regular rate of pay for all hours in excess of 60 hours or for work on the employee's day of rest, *id.*

### The Right to Unionize

38. Prior to the Act, individuals employed as farm laborers were excluded from the New York Employment Relations Act. In 1937, the New York State Legislature enacted the SLRA (now SERA), which mirrored the NLRA. The purpose of the legislation was to grant employees "the right of self-organization, to form, join or assist labor organizations, [and] to bargain collectively through representatives of their own choosing . . ." *See* SLRA, N.Y. Labor Law § 703. The statute defined the term "employees" who would be covered by the SLRA and created an exception for "any individuals employed as farm laborers" *See id.* 2019 N.Y. Sess. Laws § 3 (creating N.Y. Labor Law § 701(3)(c)).

39. This prohibition arguably conflicted with the New York State Constitution, and specifically, article 1, section 17 of the Constitution, which provides in relevant part: "Employees shall have the right to organize and to bargain collectively through representatives of their own choosing."

40. In May 2016, a New York farm laborer filed a lawsuit against the State alleging that SERA violated agricultural workers rights to engage in concerted activity under the New York Constitution.

41. After the trial court dismissed the complaint, in May 2019, the New York Supreme Court Appellate Division reversed and concluded that the constitutional right to organize and collectively bargain extended to individuals employed as farm laborers. *See Hernandez v. New York*, 173 A.D.3d 105 (N.Y. App. 2019). The court held that SERA's definition of the term "employees" to exclude farm laborers flouted the New York State Constitution and struck the law.

42. Following the *Hernandez* decision, the New York Legislature passed the Act.

*Industry Concerns*

43. Under the Act, the New York State Department of Labor (NYSDOL) is vested with authority to regulate the wage and hour provisions of the Act, while the Public Employment Relations Board (PERB) is vested with authority to regulate the concerted activity, union selection, contract formation, and arbitration provisions of the Act.

44. Following passage of the Act, Plaintiffs engaged with the Legislature and the Governor in the process of implementing the Act in an attempt to assure the legislation did not harm farms.

45. Since passage of the legislation, Plaintiffs have also tried to secure further clarification of the Act's terms through the NYSDOL administrative rulemaking process and educational programs designed to educate farms and regulatory authorities regarding the impact of the Act.

14

46. During the week of November 18, 2019, Plaintiffs organized and conducted a "Labor Roadshow" in five cities throughout the state. The Roadshow consisted of full day programming to explain the Act to farmers. Representatives from the NYSDOL as well as the PERB agreed to attend the Roadshow.

47. NYSDOL had committed to issue a frequently asked questions and answers list (FAQ) prior to the Roadshow. The expressed intention was that agents from the NYSDOL would be present at the Roadshow to educate farmers and Plaintiffs' members on the interpretations and compliance requirements under the Act. NYSDOL was unable to complete that FAQ prior to the Roadshow. However, the agencies did present their preliminary understandings on interpretations and compliance requirements during the Roadshow.

48. The presentations by NYSDOL and PERB demonstrated to the industry that the implementation of the Act would be problematic for farms. Principal among the concerns of the industry was the lack of an exclusion from coverage under the Act for farm owners and their extended family, as well as supervisors or executives, administrative and professional employees. These concerns were acknowledged on each day of the Roadshow, but the NYSDOL and PERB presenters could only comment that it was hoped this would be resolved prior to implementation of the Act.

49. Following the Roadshow, leaders of the Plaintiff organizations continue to push for release of the FAQ so that the industry leadership and Plaintiffs' organizations could advise their membership on compliance with the law.

50. On December 13, 2019, Plaintiffs submitted a "White Paper" to Governor Cuomo and the New York Legislature. The purpose of the White Paper was to outline the missing exclusions and definitions in the Act and the inherent ambiguities arising from those omissions, the harm that would arise from implementing the law without resolution of those ambiguities, and to identify specific language changes that might resolve those omissions, allowing Plaintiffs to reduce the imminent harm by properly educating farmers to implement the Act.

51. The FAQ was not released until December 17, 2019, one month after the Labor Roadshow. The FAQ contained these provisions, which only exacerbated the concerns of the industry regarding coverage:

> 4. Who is covered by the day-of-rest provision of the FLFLPA? *All farm laborers are covered except for the foreman* in charge (may be more than one), and members of the employer's immediate family including a parent, child, or spouse.

> 5. Who is covered by the over-60 overtime provision of the FLFLPA? All farm laborers, including *crew leader/chief and foremen in charge, are covered by the overtime provisions of the Act* except for the members of the employer's immediate family including a parent, child or spouse.

> 6. Are family members of LLCs, S-corps, C-Corps or partnerships excluded from the day of rest and overtime provisions? Yes, the immediate family members, including a parent, child or spouse, are excluded from the day of rest and overtime provisions. *The immediate family members of shareholders are not excluded from the day of rest and overtime provisions.*

52. Under the Act, "farm labor" has the following definition for purposes of the NYSDOL wage and hour regulatory authority: "The term 'farm labor' shall include all services performed in agricultural employment in connection with cultivating the soil,

or in connection with raising or harvesting of agricultural commodities, including the raising, shearing, caring for and management of livestock, poultry or dairy." *See* 2019 N.Y. Sess. Laws ch. 105, § 4 (amending N.Y. Labor Law § 161(1)).

53. While the term farm labor is defined, the term farm *laborer* is not defined. Presumably a "farm laborer" is one who performs farm labor. Because the definition of "farm labor" includes work "in connection with" the work described above, it appears that anyone that works on a farm is performing work in connection with farm work and is, therefore, a "farm laborer" covered under the hour limitations and overtime provisions of the law.

54. The FAQ does exclude a "foreman in charge" but only from the one day of rest provision, and there is no definition of "foreman in charge."

55. The Act also conflicts with the NLRA, which plainly excludes supervisors from the definition of employees.  Specifically, section 2 of the NLRA expressly excludes supervisors from the definition of "employee."  Section 14(a) goes a step further and exempts employers from the duty to consider supervisors as employees under any law related to collective bargaining. *See* 29 U.S.C. §§ 152(3) and (11).

56. Under the Act "farm laborer" has this definition for purposes of the PERB regulatory authority: "'Farm laborers' shall mean any individual engaged or permitted by an employer to work on a farm, except the parent, spouse, child, or other member of the employer's immediate family." 2019 N.Y. Sess. Laws ch. 105, §3 (creating N.Y. Labor Law § 701(3)(c)).

57. None of the FAQs identify an exemption for supervisors, other than the one concerning the one day of rest for foreman in charge.

58. Neither the Act nor the FAQs identify the standard exemption for bona fide executive, administrative or professional employees recognized under federal and state laws concerning overtime pay.

59. Section 14 (a) of the NLRA (29 U.S.C. § 164(a)) provides that employers shall not be compelled to treat supervisors as employees in relation to any law relating to collective bargaining:

> (a) Supervisors as union members.  Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this Act shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining.

60. Thus, the Act conflicts directly with the NLRA – employees with supervisor capacities or who are extended families may unionize under the former but are prohibited from doing so under the latter.

61. Farms in New York are required by the NYSDOL to enter into written work agreements with all of their employees that document, among other things, how employees are to be compensated. *See* Chapter 31 of the Consolidated Laws of New York, Article 19(a), Sections 673(a) and 195 of the NYS Labor Law and Part 190 of the Farm Minimum Wage Order. The form of a work agreement required by NYSDOL is the LS 309 form.

62. As a result of the changes in the law the NYSDOL indicated in the fall of 2019 that it would be issuing new LS 309 forms for compliance purposes to carry out the provisions of the Act. The LS 309 was not issued until December 17, 2019.

63. Although the revised form is now available, farms simply do not have the requisite information to complete the forms for all employees.

***Irreparable Injury if the Act is Enacted on January 1, 2020***

64. Chapter 31 of the Consolidated Laws of New York, article 19(a), section 680 provides penalties for failure to pay any employee less than the wage applicable under that article. *See* N.Y. Labor Law § 680(2). A first offense is a misdemeanor carrying a punishment of not less than fifty dollars nor more than five hundred dollars or by imprisonment of not less than ten nor more than ninety days or both and each payment to any employee in any week of less than the wage applicable under this article shall constitute a separate offense.

65. Chapter 31 of the Consolidated Laws of New York, article 19(a), section 681 also provides a private cause of action against an employer by either an employee, or the Commissioner of Labor on behalf of the employee. In such an action, if any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover the underpayments, plus attorney fees (and liquidated damages of 25% of the underpayment if willful). *See* N.Y. Labor Law § 681.

66. If farms do not reclassify the salaried exempt employees and supervisors and limit their hours as required by the Act – and pay overtime wages to these employees

as required by the Act – farms will be subjected to criminal and civil penalties as well as costs and attorney fees.

67. Chapter 31 of the Consolidated Laws of New York, Article 19(a), Section 680, entitled "Failure to Keep Records" states that "any employer or his agent, or the officer or agent of any corporation, who fails to keep the records required under this article . . . shall be guilty of a misdemeanor and upon conviction be punished by a fine of not less than fifty dollars nor more than five hundred dollars . . . , and each days failure to keep the records required under this article . . . shall constitute a separate offense." *See* N.Y. Labor Law § 680(3).  Farms that fail to complete the work agreement as required under Section 673 (a) (just released on December 19) could face penalties and even jail time for not doing so.

68. As a result of these potential consequences, farm associations such as NYSVGA (and NEDPA), cannot advise their member farms to wait to change their pay practices until after January 1, 2020, or until more clarification is provided by NYSDOL or PERB.

> Moreover, once pay classifications and rates are codified in work agreements (the LS 309 form or something similar), farms may be contractually obligated to maintain them, even if the law is amended later. In fact, federal law *requires* farms who employ H2A workers to pay any amounts promised at the time of recruitment or start of employment.

69. Under the sections of the Act concerning concerted activities and farm worker unions, farms are even more baffled regarding their compliance obligations due to the failure to carve out supervisors. Since supervisors are currently included in the definition of "farm laborer," they are afforded the protections of the Act.

70. Under 2019 N.Y. Sess. Laws ch. 105, § 19 (creating N.Y. Labor Law §704-b), it is unlawful "for an agricultural employer to . . . discourage an employee from participating in a union organizing drive, engaging in protected concerted activity, or otherwise exercising rights guaranteed by this article." But, it is also unlawful for an employer to (1) spy upon . . . through agents or any other person, any activities of employees or their representatives . . . or (2) dominate or interfere with the formation of [a union] . . . by participating or assisting in supervising . . . the initiation or creation of [a union] . . . or the meetings . . . elections of [a union] or by urging the employees to join [a union]. *See* N.Y. Labor Law § 704.

71. Farms are "stretched on a bed of *Procrustes*" – they cannot interfere with supervisor rights to engage in union activities, yet supervisors may be considered agents of the farm, and therefore prohibited from doing so. This reality has been recognized under federal law and resolved by excluding supervisors from unions.

72. In order to achieve the purposes of the Act, the law must be changed, allowing time for the Plaintiff associations to train farms, and for the farms to train supervisors and other employees on their respective rights and responsibilities under the Act.

73. Finally, section 18 of the Act is unconstitutional because it is directly contradicted by N.Y. Labor Law § 713. Section 18 prohibits strikes, but section 713 says that "[n]othing in this Article shall be construed so as to interfere with, impede or diminish in any way the right of employees to strike . . . ."

74. Upon information and belief, PERB was not consulted before the law was enacted. Had the New York State Legislature done so, Plaintiffs are convinced that the

PERB would have advised the legislature of the fatal flaws of the legislation in creating a workable labor relations act for farm workers.

75. PERB has requested Plaintiffs write to PERB asking for an opinion of counsel on the coverage of supervisors. PERB has informed Plaintiff representatives that such an opinion would not be binding on the PERB board. There has been insufficient time afforded to resolve the inherent conflicts in the law.

76. Plaintiffs find it impossible to appropriately advise members on the actions necessary and the appropriate training for their supervisors, members of farm families and their employees.

### First Claim for Relief
### Declaratory Judgment – Due Process

77. Plaintiffs incorporate by reference the allegations of Paragraphs 1-75 of the Complaint into this Claim as though fully set forth herein.

78. The Fourteenth Amendment of the Constitution of the United States provides that no state "shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Holding an individual criminally liable for failing to comply with a duty imposed by statue, with which it is legally impossible to comply, deprives that person of his due process rights. *Doe v. Snyder*, 101 F. Supp. 3d 722, 723-24 (E.D. Mich. 2015).

79. "If a statute apparently requires the performance of something which cannot be performed, a court may hold it inoperative." *Gigliotti v. N.Y., C. & S. L. R. Co.*, 107 Ohio App. 174, 181, 157 N.E.2d 447, 452 (1958).

80. 2019 N.Y. Sess. Laws ch. 105, § 3, addressing unions, defines "farm laborer" as "any individual engaged or permitted by an employer to work on a farm, except the parent, spouse, child, or other member of the employer's immediate family." By the Act's express terms, coverage extends to farm owners and their extended family, as well as to salaried supervisors, executives, administrative, and professional employees.

81. The Act also defines "farm labor" as "all services performed in agricultural employment in connection with cultivating soil, or in connection with raising or harvesting agricultural commodities, including raising, shearing, caring for and management of livestock . . . " *Id.* § 4.

82. These provisions contradict another provision of the Act that requires employers to instruct their supervisory employees not to engage in certain activities that would be unduly influential (one way or the other) to those workers' rights to engage in concerted activity. *See* 2019 N.Y. Sess. Laws ch. 105, § 19. But if supervisors are covered by the Act, farms are prohibited from interfering with their rights to communicate with other workers regarding unions. This contradiction imposes on farms an obligation to engage in conduct that would violate other provisions of the Act and thereby creates conflicting prohibitions that cannot be reconciled.

83. The Act is therefore unconstitutional and violates the 14th Amendment because mere participation of supervisors owners and family members in the collective bargaining process puts farms in a position where they will be violating other provisions of the Act. This untenable dilemma renders the Act unconstitutional on due process grounds.

84. Moreover, section 18 of the Act expressly prohibits strikes, but N.Y. Labor Law § 713 says that "[n]othing in this Article shall be construed so as to interfere with, impede or diminish in any way the right of employees to strike . . . ." This is still another imherent contradiction that renders it impossible for Plaintiffs to comply with the Act.

85. Accordingly, Plaintiffs are entitled to judgment declaring the Act unconstitutional on its face because its contradictory terms render compliance impossible.

### Second Claim for Relief
### Declaratory Judgment – Federal Preemption

86. Plaintiffs incorporate by reference the allegations of Paragraphs 1-84 of the Complaint into this Claim as though fully set forth herein.

87. The Constitution's Supremacy Clause provides "[t]his Constitution, and the Laws of the United States, which shall be made in pursuance thereof . . . shall be the Supreme law of the Land." U.S. Const. art. VI, clause 2.

88. Under the Supremacy Clause, any state law that conflicts with federal law is preempted and therefore unconstitutional.

89. State laws are invalid as preempted when it is impossible to comply with both state and federal law.

90. The Act conflicts directly with the NLRA: the Act renders agricultural supervisors and extended family members who may possess equity interests as hourly employees who may engage in concerted activities, while Section 14 (a) of the NLRA

provides that employers shall not be compelled to treat supervisors as employees in relation to any law relating to collective bargaining.

91. Accordingly, Plaintiffs are entitled to judgment declaring that 2019 N.Y. Sess. Laws § 3 (creating N.Y. Labor Law § 701(3)(c))Section is preempted and therefore invalid, as it renders it impossible to comply with its terms and with Section 14 (a) of the NLRA.

### Third Claim for Relief
### Preliminary and Injunctive Relief

92. Plaintiffs incorporate by reference the allegations of Paragraphs 1-90 of the Complaint into this Claim as though fully set forth herein.

93. Plaintiffs are entitled to injunctive relief pursuant to Federal Rule of Civil Procedure 65.

94. Injunctive relief is necessary to protect Plaintiffs' rights during and after this litigation.

95. Plaintiffs have no adequate remedy at law unless this Court enjoins Defendants from enforcing the Act, as the injuries Plaintiffs will suffer are irreparable and immediate beginning on January 1, 2020, and Defendants cannot remediate or compensate Plaintiffs for those injuries by any alternative means.

96. For the reasons set forth above, Plaintiffs are likely to succeed in obtaining a declaration that on the merits and the constitutional issues they raise are sufficiently serious.

97. Plaintiffs will suffer – and continue to suffer – irreparable injury if Defendants are not immediately enjoined from enforcing the Act, a State law that violates the Constitution. These injuries include, but are not limited to (i) criminal liability and penalties; (ii) civil liability for damages and attorney fees; (iii) economically ruinous contractual obligations; and (iv) irreparably damage employee relations, as previously salaried workers will be demoted and required to be paid on an hourly basis.

98. The balance of equities and public interest weigh in favor of injunctive relief to ensure the Act strikes a proper and fair balance of improving workers' conditions with the rights of Plaintiffs and their member farms to operate their business without running afoul of the Act.

99. At a minimum, the Court should enjoin the Act until it can evaluate and determine the constitutionality of the Act.

## **Prayer for Relief**

Plaintiffs respectfully request the Court enter judgment in their favor and against Defendants on both claims and grant the following relief:

a)  Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Farm Labor Fair Labor Practices Act is unconstitutional on its face and therefore unenforceable.

b)  Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Farm Labor Fair Labor Practices Act is invalid as preempted by federal law.

c)  Enter a preliminary and permanent injunction order that:

i.   Enjoins Defendants from enforcing the Act's requirements;

    ii. Or alternatively, staying the application and enforcement of the Act to afford the parties and regulators sufficient time to address and clarify the Act's ambiguities and contradictions set forth in this Complaint.

d) Order Defendants to pay Plaintiffs' costs of suit, including reasonable attorneys' fees, and all such further relief the Court deems just and proper.

Respectfully submitted,

By: _s/ Charles B. Palmer_
    Charles B. Palmer
    cbpalmer@michaelbest.com
    MICHAEL BEST & FRIEDRICH LLP
    N19 W24133 Riverwood Drive, Suite 200
    Waukesha, WI 53188
    Telephone: 262.956.6560
    Facsimile: 262.956.6565

    Leah H. Ziemba
    lhziemba@michaelbest.com
    Ian A. Pitz
    iapitz@michaelbest.com
    MICHAEL BEST & FRIEDRICH LLP
    One South Pinckney Street, Suite 700
    Madison, WI 53703
    Telephone: 608.257.3501
    Facsimile: 608.283.2275

    Dennis C. Vacco
    dvacco@lippes.com
    Scott S. Allen, Jr.
    sallen@lippes.com
    LIPPES MATHIAS WEXLER FRIEDMAN LLP
    50 Fountain Plaza, Suite 1700
    Buffalo, NY 14202-2216
    Telephone: 716.853.5100
    Facsimile: 716.853.5199

    Plaintiffs New York State Vegetable Growers Association, Inc. and Northeast Dairy Producers Association, Inc.