UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

————————————————————————

NEW YORK STATE VEGETABLE
GROWERS ASSOCIATION, INC., and
NORTHEAST DAIRY PRODUCERS
ASSOCIATION, INC.,

             Plaintiffs,

     v.

GOVERNOR ANDREW CUOMO, *in his
official capacity as Governor of New York*,
LETITIA JAMES, *in her official capacity
as Attorney General of New York*, and
ROBERTA REARDON, *in her official
capacity as Commissioner of the New
York Department of Labor*,

             Defendants.

————————————————————————

19-CV-1720
DECISION & ORDER

On December 30, 2019, the plaintiffs, the New York State Vegetable Growers

Association, Inc., and the Northeast Dairy Producers Association, Inc., filed a complaint

in this Court.  Docket Item 1.  They alleged that the Farm Laborers Fair Labor Practices

Act, 2019 N.Y. Sess. Laws ch. 105, violated the Due Process Clause of the Fourteenth

Amendment to the United States Constitution and also was preempted by the National

Labor Relations Act, 29 U.S.C. §§ 151-169. *Id.*

That same day, the plaintiffs moved for a temporary restraining order (TRO) and

preliminary injunction, Docket Item 2, and this Court heard argument from both sides,

Docket Item 6.  The Court partially granted the TRO, Docket Item 7, which has

remained in place under an agreement between the parties, *see* Docket Item 11 and 13.

After Governor Andrew Cuomo enacted a bill amending the Farm Laborers Fair Labor

Practices Act in April 2020, the plaintiffs amended their complaint in May 2020. *See* Docket Item 16. The defendants responded in opposition to the renewed motion for a preliminary injunction, Docket Item 17; the plaintiffs replied; Docket Item 20; and the defendants sur-replied, Docket Item 25. This Court heard argument from both sides on July 10, 2020. *See* Docket Item 30.

For the reasons that follow, the Court DENIES the plaintiffs' motion for a preliminary injunction.

## BACKGROUND

### I.  THE FARM LABORERS FAIR LABOR PRACTICES ACT

On July 17, 2019, the New York State Legislature enacted the Farm Laborers Fair Labor Practices Act ("FLFLPA") to extend wage, hour, and labor-relations protections to agricultural workers. *See* 2019 N.Y. Sess. Laws ch. 105. On April 3, 2020, the Legislature amended the FLFLPA. 2020 N.Y. Sess. Laws ch. 58 (S. 7508-B).

As amended, the FLFLPA affords certain labor protections to "farm laborers." A "farm laborer" is "any individual engaged or permitted by an employer to work on a farm," except "[m]embers of an agricultural employer's immediate family who are related to the third degree of consanguinity or affinity . . . [,] work on [the] farm out of familial obligations[,] and are not paid wages, or other compensation[,] based on their hours or days of work." *Id.* Part II, §§ 1, 2 (codified at N.Y. Lab. Law §§ 2(18), 701(3)(c) (2020)).[1]

---

[1] The FLFLPA originally provided that "'[f]arm laborers' shall mean any individual engaged or permitted by an employer to work on a farm, *except the parent, spouse, child, or other member of the employer's immediate family*." 2019 N.Y. Sess. Laws ch. 105, § 3 (emphasis added).

The FLFLPA extends wage and hour protections to farm laborers.  Employers must provide farm laborers "at least twenty-four consecutive hours of rest in each and every calendar week" and cannot require them "to work more than sixty hours in any calendar week" unless they are compensated at an overtime rate of "at least one and one-half times the laborer's regular rate of pay."  2019 N.Y. Sess. Laws ch. 105, §§ 4, 6 (codified at N.Y. Lab. Law § 161(1) and N.Y. Labor Laws § 163-a).  The day-of-rest requirement does not apply to the "[f]oreman in charge."  N.Y. Lab. Law § 161(2)(a).  To ensure compliance with these provisions, employers must sign written work agreements specifying the terms and conditions of farm laborers' employment.  *See* N.Y. Lab. Law §§ 195, 671(7), 673-a; 12 NYCRR § 190-6.1.  The Department of Labor provides a standard form, "LS 309," for this purpose.  *See* N.Y. Dep't of Labor, Div. of Lab. Standards, *Pay Notice and Acknowledgement for Farm Worker*s (June 2020), https://labor.ny.gov/formsdocs/wp/LS309.pdf.

The FLFLPA also extends labor-relations protections under the State Employment Relations Act to farm laborers.  "Employees," including farm laborers, "shall have the right of self-organization[;] to form, join, or assist labor organizations[;] to bargain collectively through representatives of their own choosing[;] and to engage in concerted activities . . . ."  N.Y. Lab. Law § 703.  These organizing protections are, however, subject to certain limitations.  For example, "[n]otwithstanding any other provision of law, for farm laborers the term 'concerted activities' shall not include a right to strike or other concerted stoppage of work or slowdown."  2019 N.Y. Sess. Laws ch. 105, § 18 (codified at N.Y. Lab. Law § 703); *see also* 2019 N.Y. Sess. Laws ch. 105, § 19 (codified at N.Y. Lab. Law § 704-b(1)) ("It shall be an unfair labor practice for a farm

3

laborer or an employee organization representing farm laborers to strike any agricultural employer.").  The rights of "supervisory employees" similarly are circumscribed.  If "a majority" of employees choose to engage in "collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment," the Public Employment Relations Board (the "PERB") "shall determine whether any supervisory employee shall be excluded from any negotiating unit that includes rank-and-file farm laborers; provided, however, that nothing in this subdivision shall be construed to limit or prohibit any supervisory employee from organizing a separate negotiating unit."  2020 N.Y. Sess. Laws ch. 58, § 3 (codified at N.Y. Lab. Law § 705(1)(b)).

Employers who violate certain provisions of the FLFLPA face criminal and civil penalties.  Under New York Labor Law § 680(2), "[a]ny employer . . . who pays or agrees to pay to any employee less than the wage applicable under this article shall be guilty of a misdemeanor . . . punish[able] by a fine of [fifty to five hundred dollars,] by imprisonment of [ten to ninety] days[,] or by both such fine and imprisonment."  Similarly, under New York Labor Law § 680(3), "[a]ny employer . . . who fails to keep the records required under this article"—including LS 309—"shall be guilty of a misdemeanor . . . punish[able] by a fine of [fifty dollars to five hundred dollars]."

Under New York Labor Law § 681, an employee "paid . . . less than the wage to which he is entitled . . . may recover in a civil action the amount of any such underpayments, together with costs and . . . reasonable attorney's fees," as well as liquidated damages of twenty-five percent "if such underpayment was willful."  The PERB also may investigate and "take . . . affirmative or other action," including the award of backpay and the reinstatement of wrongfully terminated employees, to rectify

"unfair labor practice[s]."  29 U.S.C. § 706(3).  Sections 704(1)-(3) specify certain such

"unfair labor practices":

> It shall be an unfair labor practice for an employer . . . [t]o spy upon or keep
> under surveillance, whether directly or through agents or any other person,
> any activities of employees or their representatives . . . [or] dominate or
> interfere with the formation, existence, or administration of any [union] . . .
> by participating or assisting in, supervising, controlling or dominating (1) the
> initiation or creation of any such [union], or (2) the meetings, management,
> operation, elections, formulation or amendment of constitution, rules or
> policies, of any such [union].

N.Y. Lab. Law § 704(1)-(3).  The FLFLPA also added language specific to farm

laborers: "It shall be an unfair labor practice for an agricultural employer to . . .

discourage union organization or to discourage an employee from participating in a

union organizing drive, engaging in protected concerted activity, or otherwise exercising

the rights guaranteed under this article."  2019 N.Y. Sess. Laws ch. 105, § 19 (codified

at N.Y. Lab. Law § 704-b(2)(c)).

## II.     NATIONAL LABOR RELATIONS ACT

In addition to the state labor protections discussed above, protections also exist

under federal law.  The National Labor Relations Act ("NLRA") guarantees the rights of

"employees" to bargain collectively over wages, hours, and other terms and conditions

of employment.  *See* 29 U.S.C. § 157.  But "agricultural laborers" are not "employees."

*Id.* § 152(3).  Neither are "supervisors."  *Id.* §§ 152(3), (11); *see also* 29 U.S.C. § 164(a)

("Nothing herein shall prohibit any individual employed as a supervisor from becoming

or remaining a member of a labor organization, but no employer subject to this

subchapter shall be compelled to deem individuals defined herein as supervisors as

employees for the purpose of any law, either national or local, relating to collective

bargaining.").

## DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right."
*Monserrate v. N.Y. St. Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  It "is an equitable remedy and an act of discretion by the court."  *Am. Civ. Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Trump v. Deutsche Bank AG*, 943 F.3d 627, 640 (2d Cir.), *cert. granted*, 140 S. Ct. 660 (2019) (quoting *Winter*, 555 U.S. at 20).[2]  Moreover, the Second Circuit has instructed that a mandatory injunction—that is, an injunction commanding a positive act, as opposed to one that merely maintains the status quo—"should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'"  *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).

---

[2]  Although the Second Circuit also recognizes a "less rigorous standard" of "sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in their favor," that standard "cannot be used"—as the plaintiffs seeks to do here—"to preliminarily enjoin governmental action."  *Deutsche Bank*, 943 F.3d at 637 (citations omitted); *see also Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995) ("As long as the action to be enjoined is taken pursuant to a statutory or regulatory scheme, even government action with respect to one litigant requires application of the 'likelihood of success' standard.").

I.      **LIKELIHOOD OF SUCCESS ON THE MERITS**

The plaintiffs argue that the FLFLPA is unconstitutional in several respects.  First, they argue that it includes inherently irreconcilable provisions—what the plaintiffs dub "untenable dilemmas"—and therefore facially violates the employers' due process rights under the Fourteenth Amendment.  More specifically, they allege that the FLFLPA inconsistently requires employers both to allow supervisors and family members to bargain collectively and to prevent those same employees from interfering with rank-and-file employees' rights to bargain collectively.  Docket Item 16 at 24-26.  Similarly, they argue, the provisions prohibiting strikes are incompatible with the provision permitting them.  *Id.*  The plaintiffs also claim that the provision permitting supervisors to bargain collectively conflicts with the NLRA and therefore is preempted under the Supremacy Clause.  Docket Item 16 at 26-27.

The defendants respond that the plaintiffs err procedurally and substantively.  Procedurally, the defendants argue, the plaintiffs are unlikely to show that they have standing to sue because they have not demonstrated that a live "case or controversy" exists.  Docket Item 17 at 16-18.  Substantively, the defendants argue, the plaintiffs are not likely to show that a fair reading of the FLFLPA renders it either internally inconsistent, so as to violate the Fourteenth Amendment, or externally inconsistent with the NLRA, so as to violate the Supremacy Clause.  *Id.* at 19-28.

A.      **Vagueness and the Fourteenth Amendment**

"Among the most fundamental protections of due process is the principle that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of . . . statutes.  All are entitled to be informed as to what the State commands

or forbids.'" *Cunney v. Bd. of Trustees of Vill. of Grand View, N.Y.*, 660 F.3d 612, 620 (2d Cir. 2011) (quoting *Cramp v. Bd. of Pub. Instruction*, 368 U.S. 278, 287 (1961)). "Animating this . . . vagueness ground is the constitutional principle that individuals should receive fair notice or warning when the state has prohibited specific behavior or acts." *Id.* at 621 (quoting *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007). A law therefore violates due process "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Id.* (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)); *see also Thibodeau*, 486 F.3d at 66 (explaining that the vagueness doctrine "does not require 'meticulous specificity' from every statute . . . as language is necessarily marked by a degree of imprecision" (citations omitted)).

"[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill*, 530 U.S. at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)). Stated differently, because "[t]he claim in a facial challenge is that a statute is so fatally indefinite that it cannot constitutionally be applied to anyone," a statute is fatally vague only if it "proscribe[s] no comprehensible course of conduct at all." *Copeland v. Vance*, 893 F.3d 101, 110, 114 (2d Cir. 2018) (quoting *United States v. Powell*, 423 U.S. 87, 92 (1975)), *cert. denied*, 139 S. Ct. 2714 (2019).

### 1.    Labor-Relations Provision

The defendants first argue that the plaintiffs are unlikely to point to a justiciable controversy ripe for review with respect to the contested labor-relations provisions. *See* Docket Item 17 at 16-18. The plaintiffs respond that the FLFLPA creates several "untenable dilemmas" for farm employers and that employers immediately must choose

among opposing and impossibly inconsistent courses of action.  Docket Item 16 at 26.

Before delving into the merits of this argument, it is useful to delineate which of the

many provisions referenced in the plaintiffs' papers allegedly violate the Constitution,

and—just as important—which do not.

The FLFLPA amended the New York Labor Laws in several respects, roughly

classified as changes to the wage-and-hour provisions, N.Y. Lab. Law §§ 161, 163-a,

and to the labor-relations provisions, *id.* §§ 703, 704-b, 705.  Although the plaintiffs refer

to the wage-and-hour provisions frequently in their complaint, in the end they advance

no argument that these portions of the FLFLPA violate the Constitution.  Instead, the

plaintiffs argue (1) that extending labor-relations protections to supervisory and family-

member farm laborers "contradict[s] another provision of the [FLFLPA] that requires

employers to instruct their supervisory employees not to engage in certain activities that

would be unduly influential . . . to those workers' rights to engage in concerted activity,"

Docket Item 16 at 25 (citing 2019 N.Y. Sess. Laws ch. 105, § 19 (codified at N.Y. Lab.

Law § 704-b(2)(c))); (2) that section 703, which prohibits farm laborers from striking,

contradicts section 713, which expressly disclaims that any provision of that article of

the labor law prohibits striking, *id.* at 26; and (3) that extending labor-relations

protections to supervisory farm laborers contradicts "section 14(a) of the NLRA[, 29

U.S.C. §§ 152(3), (11), which] provides that employers shall not be compelled to treat

supervisors as employees in relation to any law relating to collective bargaining," *id.* at

27.

Notwithstanding their failure to advance any argument challenging the validity of

the wage-and-hour provisions, the plaintiffs allege that they will be injured by criminal

and civil enforcement of those provisions—not the labor-relations provisions.  *See*

Docket Item 16 at 21-22 (citing N.Y. Labor Laws § 680(2) (criminalizing wage theft); *id.*

§ 680(3) (criminalizing improper record keeping); *id.* § 681 (creating private right of

action to recover wages)).  But the plaintiffs do not explain that concern in any detail,

and the Court is hard pressed to understand it.  Indeed, the Court is aware of only one

enforcement mechanism that relates to the FLFLPA's labor-relations provisions:

section 706(3), which authorizes the PERB to "take . . . affirmative or other action" to

rectify unfair labor practices, including an employer's discouraging collective action.

And the plaintiffs do not reference this provision anywhere in their complaint.

The first question therefore is whether, reading the plaintiff's complaint

generously to allege injury under section 706, the PERB's authority to enforce the

FLFLPA's labor-relations provisions—and those provisions alone—likely presents a

judiciable question.

"To be justiciable, a cause of action must be ripe—it must present 'a real,

substantial controversy, not a mere hypothetical question.'"  *Nat'l Org. for Marriage, Inc.*

*v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of*

*Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)).  The ripeness doctrine "implicates two distinct

conceptual jurisdictional criteria": (i) "the existence of jurisdiction" under Article III's case

or controversy requirement and (ii) "judicial prudence."  *Id.* (citing *Simmonds v. INS*, 326

F.3d 351, 356-57 (2d Cir. 2003)).

Constitutional ripeness "prevents courts from declaring the meaning of the law in

a vacuum and from constructing generalized legal rules unless the resolution of an

actual dispute requires it."  *Id.* at 688.  The Second Circuit has explained that, "[o]ften,

the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing." *Id.* "[T]o say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Id.* (footnote omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Prudential ripeness "means that the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay." *Id.* (alteration in original) (quoting *Simmonds*, 326 F.3d at 357). "To determine whether to abstain from a case on prudential ripeness grounds," courts "proceed with a two-step inquiry, . . . evaluat[ing] both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 691 (footnote omitted) (quoting *Grandeau*, 528 F.3d 122,131-32 (2d Cir. 2008)). "The 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *Id.* (quoting *Grandeu*, 528 F.3d at 132). The hardship analysis "ask[s] whether the challenged action creates a direct and immediate dilemma for the parties." *Id.* (quoting *Grandeu*, 528 F.3d at 134). "A plaintiff must show either prosecution pursuant to the challenged provision or that a sufficiently real and immediate threat of prosecution exists." *Marchi v. Bd. of Coop. Educ. Svcs. of Albany*, 173 F.3d 469, 478-79 (2d Cir. 1999) (citations omitted).

In *Marchi*, for example, the court found no justiciable controversy in a suit challenging an agency's directive regulating school teachers' off-campus speech. The court explained that it could "imagine a variety of . . . hypothetical application[s] of the directive," some constitutional and others not. *Id.* at 478. Given this ambiguity, and

because the agency had not yet "threatened to apply the directive to any of [the plaintiff's] off-campus expressive activities," a court entertaining the challenge "would be forced to guess at how [the agency] might apply the directive and to pronounce on the validity of numerous possible applications of the directive, all highly fact-specific and, as of yet, hypothetical." *Id.* "Such an open-ended and indefinite challenge," the court concluded, "[was] not well suited to judicial decision." *Id.*

Here, the plaintiffs allege that they must choose between permitting supervisory and family-member employees to bargain collectively, on the one hand, and protecting their rank-and-file employees from undue influence from supervisory and family-member employees, on the other. These allegations likely are insufficient to show constitutional ripeness, let alone prudential ripeness. As in *Marchi*, this Court could "imagine a variety of . . . hypothetical application[s] of the [statute]," some constitutional and others not. *See Id.* In particular, the PERB has yet to adjudicate a concrete inquiry into "whether [a] supervisory employee [should] be excluded from [a] negotiating unit that includes rank-and-file farm laborers." *See* 2020 N.Y. Sess. Laws ch. 58, § 3 (codified at N.Y. Lab. Law § 705(1)(b)). How the PERB will handle that situation therefore is far from clear.

For example, the PERB might, through a series of individual adjudications, ultimately determine that no supervisory employee may be involved in a negotiating unit without running afoul of section 704's prohibition on surveillance and interference. In that case, the plaintiffs' stated concerns never would materialize.[3] The PERB

---

[3] The defendants point to a similar process that would apply to family-member farm laborers. *See* Docket Item 17 at 20. Whenever employees seek to organize, the PERB "shall decide in each case whether, in order to insure to employees the full

alternatively might find, for highly fact-specific reasons, that certain supervisory individuals may be involved without risking impermissible interference.  The relevant statutory provisions, after all, do not outright prohibit supervisory or family-member employees' involvement; rather, they prohibit employer interference "directly or *through agents or any other person.*"  N.Y. Lab. Law § 704; *see also Southern Pride Catfish*, 331 NLRB 618 (2000) (employer liable for unlawfully surveilling employees because manager told first-line supervisors to keep a list of employees wearing union t-shirts and that such employees would be fired).  In arguing that the statute is facially unconstitutional, the plaintiffs in effect argue that supervisors and family members *never* could engage in collective bargaining units alongside rank-and-file employees without violating the interference provision.  Such an argument implausibly presumes that *all* family members and supervisors are non-autonomous actors, *always* operating at the direction of their employers.

In short, the plaintiffs are not likely to demonstrate that their facial challenge to the statute's labor-relations provisions is ripe.  Until the PERB has an opportunity to reach determinations outlined above, it likely would be, at a minimum, imprudent for the Court to decide the issues presented in the plaintiffs' motion.  The Court "would be forced to guess at how [the agency] might apply [section 705(1)(b)] and to pronounce on the validity of numerous possible applications of the [statute], all highly fact-specific

---

benefit of their right to self-organization, to collective bargaining[,] and otherwise to effectuate the policies of this article, the unit appropriate for the purposes of collective bargaining shall be the employer unit, multiple employer unit, craft unit, plant unit, or any other unit."  N.Y. Lab. Law § 705(2).  The PERB also "shall have power to determine who may participate in the election."  *Id.* § 705(4).  So, as with supervisory employees, it remains to be seen whether employers will, in fact, need to choose between family-members' and rank-and-file employees' collective-bargaining rights.

and, as of yet, hypothetical." *Marchi,* 173 F.3d at 478.  In other words, the plaintiffs likely neither present "a real or concrete dispute affecting cognizable current concerns of the parties," nor demonstrate that this Court should "becom[e] embroiled in adjudications that may later turn out to be unnecessary."  *See Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688 (quoting *Simmonds*, 326 F.3d at 357).

The plaintiffs' first claim therefore likely is unripe—and the plaintiffs thus are unlikely to succeed on the merits of that claim—to the extent it alleges that farm employers unconstitutionally must choose between protecting the collective bargain rights of their supervisory and family-members employees and protecting those same rights of their rank-and-file employees.  The Court nevertheless will not dismiss the claim at this early point in the litigation.  *Cf. Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63-64 (2d Cir. 2009) ("[I]t is [a federal court's] obligation to raise the matter of subject matter jurisdiction *whenever* it appears from the pleadings or otherwise that jurisdiction is lacking." (emphasis in original) (citation omitted)); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  Because the Court does not grant the plaintiffs' motion for a preliminary injunction, and because the plaintiffs' alternative ground raised in the first claim of the amended complaint—that the strike provisions are internally inconsistent—likely presents, at this early stage, a live case or controversy, the Court defers a decision on whether the labor-relations provisions present a justiciable question.

### 2.    Strike Provisions

The plaintiffs also argue that section 703, which prohibits farm laborers from striking, unconstitutionally contradicts section 713, which expressly disclaims that any provision of that article of the Labor Law prohibits striking.  Docket Item 16 at 26.  More specifically, the FLFLPA provides that "[n]otwithstanding any other provision of law, for farm laborers the term 'concerted activities' shall not include a right to strike or other concerted stoppage of work or slowdown."  2019 N.Y. Sess. Laws ch. 105, § 18 (codified at N.Y. Lab. Law § 703).  But an existing provision of the Labor Law elsewhere provides that "[n]othing in this article shall be construed so as to interfere with, impede[,] or diminish in any way the right of employees to strike or engage in other lawful, concerted activities."  N.Y. Lab. Law § 713.

The plaintiffs are not likely to succeed in their claim that a person "of ordinary intelligence" would not know which of these two provisions to apply.  It is a "basic principle of statutory construction"—indeed, of basic logic—"that a specific statute . . . controls over a general provision . . . particularly when the two are interrelated and closely positioned."  *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981).  Although section 713 purports to protect the right of all employees to strike, section 703 plainly overrides that section with respect to farm laborers.  The plaintiffs therefore are unlikely to succeed on their claim that the various provisions of the FLFLPA regulating employees' rights to strike are unconstitutionally vague.

### 3.    "Familial Obligation"

The plaintiffs also argue, for the first time in their reply, that the FLFLPA's provision excluding certain family members from the wage-and-hour and the labor-

relations provisions are impermissibly vague in their reliance on the undefined term

"familial obligations."  *See* Docket Item 20 at 6-8.  This Court will not consider new

arguments raised for the first time in the plaintiffs' reply.  *See, e.g.*, *Zirogiannis v.*

*Seterus, Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016) (explaining that courts will not

consider "[n]ew arguments first raised in reply papers in support of a motion" (quoting

*Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998)), *aff'd*, 707 F.

App'x 724 (2d Cir. 2017) (summary order).  *Cf. Knipe v. Skinner*, 999 F.2d 708, 711 (2d

Cir. 1993) ("Arguments may not be made for the first time in a reply brief.").  Simply

quoting the definition of "farm laborer" in the amended complaint and noting that

"familial obligation[ ] is nowhere defined" is insufficient to raise the argument.  *See*

Docket Item 16 at 6.  The amended complaint unambiguously alleges that the FLFLPA

is "unconstitutional and violates the 14th Amendment because *mere participation of*

supervisors, owners[,] and *family members in the collective bargaining process* puts

farms in a position where they will be violating other provisions of the Act."  *Id.* at 26

(emphasis added); *see also id.* (alleging that the statute's "contradictory terms" create

an "untenable dilemma").

What is more, the plaintiffs chose not to amend their motion for a

TRO/preliminary injunction, notwithstanding their filing of an amended complaint, and

notwithstanding the many changes to the statute—including the addition of the term

"familial obligation"—since the motion originally was filed.  That leaves this Court with

only the original motion for a TRO/preliminary injunction and the amended complaint

from which to glean their arguments.  It would be neither efficient nor prudent for this

Court to read between the lines of submissions from counseled litigants—an

observation that especially is true in the context of the "extraordinary" remedy the plaintiffs seek here.[4]  *Cf. United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones").  To the extent the plaintiffs seek to raise this ground for relief, they may move to amend their complaint for a second time to properly raise the argument.

In sum, for all the above reasons, the plaintiffs are not likely to succeed on the merits of their first claim for relief, alleging that the FLFLPA violates the Fourteenth Amendment.

---

[4] In any event, even were the Court to consider this argument, it would not change the outcome.  The plaintiffs have not pointed to a concrete example of a farm employer paying her family-member laborer a salary below the relevant minimum wage where there is any serious question whether that laborer accepts the lesser wages out of "familial obligation."  In other words, the plaintiffs have not pointed to any evidence that their purported concern—that section 680(2) might be unfairly used to prosecute an ordinary citizen for paying a family member below minimum wage—is plausible. Speculation that such a circumstance *could* arise is insufficient grounds for this Court to block enforcement of a statute.  *See New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) (explaining that to succeed on a "pre-enforcement," "facial challenge, 'the challenger must establish that *no set of circumstances* exists under which the Act would be valid'" (emphasis in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  "Should such a[n unfair] prosecution ever occur, the defendant could bring an 'as applied' vagueness challenge, grounded in the facts and context of a particular set of charges.  That improbable scenario [likely] cannot, however, adequately support the *facial* challenge plaintiffs attempt to bring here."  *Id.* (emphasis in original).

### B.    Preemption and the Supremacy Clause

"Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are without effect." *Figueroa v. Foster*, 864 F.3d 222, 227 (2d Cir. 2017) (citation omitted).

> In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*Id.* at 227-28 (citation and footnote omitted).  Because "[t]he NLRA does not contain an express preemption provision . . . , '[t]he doctrine of labor law pre-emption concerns the extent to which Congress has placed *implicit* limits on the permissible scope of state regulation of activity touching upon labor-management relations.'" *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 84 (2d Cir. 2015) (emphasis in original) (quoting *N.Y. Tel. Co. v. N.Y. Dep't of Labor,* 440 U.S. 519, 527 (1979)).  And in that regard, only the final preemption category—conflict preemption—applies to challenges under the NLRA.  "[T]he Supreme Court has explicitly explained that the mere existence of the NLRA does not 'indicate[ ] a congressional intent to usurp the entire field of labor-management relations.'" *Figueroa*, 864 F.3d at 229 (quoting *Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Local 54*, 468 U.S. 491, 501, (1984)); *see also United Farm Workers of Am., AFL-CIO v. Az. Agr. Emp't Rels. Bd.*, 669 F.2d 1249, 1257 (9th Cir. 1982) (finding that "[n]othing in the [NLRA] . . . suggest[ed] that Congress intended to preempt . . . state action by legislating for the entire field"; rather, "Congress's exclusion of agricultural employees from the Act" led to "precisely the opposite inference").

So while "states may not regulate behavior covered by [section] 7 or [section] 8 of the NLRA or behavior arguably covered by either of those two sections," *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 508 (2d Cir. 2002) (citing *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983)), states are not prohibited from regulating labor-relations that fall outside the scope of those sections. That is the case here.

The plaintiffs argue that the FLFLPA's extension of labor-relations protections to supervisory farm laborers contradicts section 14(a) of the NLRA, 29 U.S.C. §§ 152(3), (11). Docket Item 16 at 27. Under the FLFLPA, "employees," including supervisory employees, "shall have the right of self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities . . . ." N.Y. Lab. Law § 703; N.Y. Lab. Law § 705(1)(b); *see also* 2020 N.Y. Sess. Laws ch. 58, § 3 (codified at N.Y. Lab. Law § 705(1)(b)) ("[N]othing in this subdivision shall be construed to limit or prohibit any supervisory employee from organizing a separate negotiating unit."). Under the NLRA, in contrast, "no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining." 29 U.S.C. § 164(a).

The Court agrees with the defendants that under its plain terms the NLRA likely does not prohibit states from extending labor-relations protections to supervisory *farm* laborers. The relevant provision of the NLRA applies only to "employer[s] subject to this subchapter." 29 U.S.C. § 164(a). Because "[a]gricultural laborers" are not considered "employees," *id.* § 152(3), it follows that employers of agricultural laborers are not "subject to" section 164(a). That is to say, farm employers are not covered under

section 164(a), at least not with respect to their activities relative to their farm-laborer employees—a class which necessarily includes supervisory farm-laborer employees.

*Beasley v. Food Fair of N.C. Inc.*, 416 U.S. 653 (1974), is not the contrary.  In that case, the Supreme Court held that section 164(a) prohibited states from enacting laws that required employers to treat supervisors as employees.  *Id.* at 661-62.  But, unlike here, neither party disputed that the employer in *Beasley* was "subject to" the NLRA with respect to the supervisory-employee plaintiffs, several grocery store managers.  What is more, the fact that Congress "perceived [an] imbalance in labor-management relationships . . . from putting supervisors in the position of serving two masters with opposed interests," *id.* at 661-62, does not mean that such an imbalance is inherent to that relationship or that a different legislature would be compelled to make that same policy choice.  The New York Legislature might have concluded, for example, that the competing interests identified by Congress do not apply in the agricultural context, or that certain benefits of rank-and-file employees and their supervisors speaking with one voice outweigh the costs identified by Congress.  The precise reasoning behind the Legislature's decision is not material; instead, what matters is only that reasonable minds might differ on this issue.  It therefore would be incongruous for Congress to leave to the states whether and how to regulate agricultural labor, except with respect to the policy-based question of whether permitting supervisors to bargain collectively with their rank-and-file employees would "threaten realization of the basic ends of . . . labor legislation," *see id.* at 660.

The plaintiffs therefore are unlikely to succeed on their claim that the FLFLPA's protection of supervisory farm-laborers' right to organize is preempted by the NLRA.

20

## II.    IRREPARABLE HARM

For the reasons stated above, the plaintiffs have not shown that they will suffer irreparable harm if the Court does not enjoin enforcement of the FLFLPA.  In terms of enforcement penalties, the plaintiffs point only to the power of the PERB to rectify "unfair labor practices" *if* the PERB in fact resolves several as-yet hypothetical scenarios against the farm employers.  This sort of speculative harm is insufficient to warrant the "extraordinary" remedy of a preliminary injunction preventing a legislature from implementing a duly-enacted statute.

## III.    BALANCE OF EQUITIES AND PUBLIC INTEREST

With respect the balance of equities and the public interest—two factors which "merge when the Government is the opposing party"—those factors favor the defendants as well.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  Two elected branches of state government—the legislature and governor—have determined that supervisory and family-member farm-laborers should receive certain labor protections. The plaintiffs' disagreement with that choice certainly is within their rights as citizens of this state.  But mere disagreement from a small constituency does not tip the equities of public interest in that group's favor.

## **CONCLUSION**

For the reasons stated above, the plaintiffs' motion for a preliminary injunction, Docket Item 2, is DENIED, and the temporary restraining order is lifted.  The plaintiffs may move to amend their complaint no later than August 24, 2020.  If the plaintiffs do not move to amend their complaint, the defendants shall answer the complaint or otherwise move with respect to the first amended complaint no later than September 23, 2020.  If the defendants respond by motion, the plaintiffs shall file and serve their response no later than October 23, 2020, and the defendants shall file and serve their reply no later than November 6, 2020.  The Court will set oral argument at a later date if necessary.


SO ORDERED.

Dated:        July 23, 2020
             Buffalo, New York


 */s/ Hon. Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE