UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NEW YORK STATE VEGETABLE GROWERS
ASSOCIATION, INC., and NORTHEAST DAIRY
PRODUCERS ASSOCIATION, INC.,

                        Plaintiffs,

v.

GOVERNOR ANDREW CUOMO, in his official
Capacity as Governor of New York, LETITIA JAMES,
in her official capacity as Attorney General, and
ROBERTA REARDON, in her official capacity as
Commissioner of the New York State Department
of Labor,

                        Defendants.

19-CV-1720-LJV-MJR

REPORT AND
RECOMMENDATION

---

## INTRODUCTION

This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) by the Honorable Lawrence J. Vilardo for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. (Dkt. No. 39). Before the Court is a motion to dismiss Plaintiffs' Second Amended Complaint brought by Defendants' Andrew Cuomo, Letitia James, and Roberta Reardon pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 36). For the following reasons, this Court recommends that the District Court grant the Defendants' motion to dismiss.

## BACKGROUND and PROCEDURAL HISTORY

On December 30, 2019, the New York State Vegetable Growers Association, Inc., and the Northeast Dairy Producers Association, Inc. ("Plaintiffs") filed a complaint against Andrew Cuomo, Governor of New York; Letitia James, Attorney General of New York;

and Roberta Reardon, Commissioner of the New York State Department of Labor, ("Defendants"), each in their official capacities. (Dkt. No. 1). Therein, plaintiffs alleged that the Farm Laborers Fair Labor Practices Act, ("FLFLPA" or "the Act"), 2019 N.Y. Sess. Laws ch. 105, violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution and was preempted by the National Labor Relations Act, 29 U.S.C. §§ 151-169. (*Id*.). Plaintiffs sought a temporary restraining order and preliminary injunction preventing defendants from enforcing the Act. (Dkt. No. 2). On December 21, 2019, the District Court granted the temporary restraining order until further hearing on plaintiffs' motion. On April 3, 2020, the New York State Legislature amended the FLFLPA. *See* 2020 N.Y. Sess. Law ch. 58 (SB 7508-B). In response, plaintiffs filed an amended complaint and renewed their motion for a preliminary injunction. (Dkt. No. 16). The District Court heard oral argument on plaintiffs' motion on July 10, 2020 and issued a Decision and Order on July 23, 2020. (Dkt. No. 31). Therein, the District Court lifted the temporary restraining order and denied plaintiffs' motion for injunctive relief. (*Id*.).

Pursuant to Judge Vilardo's Order, plaintiffs moved to amend their complaint. (Dkt. No. 32). The unopposed motion to amend was granted and plaintiffs filed a second amended complaint, the operative pleading in this case, on September 24, 2020. (Dkt. No. 35). The second amended complaint omits the prior cause of action based on preemption but maintains that the Act deprives plaintiffs of their due process rights. Plaintiffs allege that the Act is void on its face because "it is unconstitutionally vague and contradictory to such a degree that Plaintiffs and their member farms will be unable to comply with its demands." (*Id*. at ¶¶ 1, 71-79). They seek injunctive relief preventing defendants from enforcing the provisions of the Act. (*Id*. at ¶¶ 80-86).

2

On October 30, 2020, defendants filed the instant motion to dismiss plaintiffs' second amended complaint pursuant to Rule 12(b)(1), on the basis that plaintiffs' claims are unripe and unfit for judicial review, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. No. 36). Plaintiffs filed a response in opposition to the motion. (Dkt. No. 37). Defendants filed a reply. (Dkt. No. 38).[1] On February 8, 2021, the Court heard oral argument on the motion. The Court requested additional briefing from the parties at that time. Supplemental briefs were submitted by both parties on February 22, 2021. (Dkt. Nos. 44; 45). Defendants then filed an additional letter on March 1, 2021 (Dkt. No. 46), and plaintiffs did the same the following day (Dkt. No. 47). With the conclusion of briefing, the Court considered the matter submitted for report and recommendation.

## DISCUSSION

*Standard of Review*

As a threshold matter, a court must determine whether it has subject matter jurisdiction over a plaintiff's claims. *Foster-Bey v. Potter*, 296 F. Supp. 2d 195, 201 (D. Conn. 2003). A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). In turn, "a motion to dismiss for want of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is reviewed

---

[1] The District Court set a briefing schedule for the motion before making a dispositive referral of the matter to this Court on January 12, 2021. (Dkt. Nos. 34; 39).

3

under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Pennacchio ex rel. Old World Brewing Co., Inc. v. Powers*, 05-CV-0985, 2007 U.S. Dist. LEXIS 8051, at *6 (E.D.N.Y. Feb. 5, 2007). A court must accept as true all material factual allegations in the complaint, but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). A court may refer to evidence outside the pleadings when resolving questions of jurisdiction under Rule 12(b)(1). *See Luckett v. Burre*, 290 F.3d 493, 496-97 (2d. Cir. 2002) (citations omitted). Evidence concerning the court's jurisdiction "may be presented by affidavit or otherwise." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

To state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for

relief [...] requires the [...] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

### *Farm Laborers Fair Labor Practices Act*

The New York State Legislature enacted the FLFLPA to provide labor protections for farm laborers who have been historically excluded from Federal labor laws.[2] *See* 2019 N.Y. Sess. Laws ch. 105 (A. 8419), *amended by* 2020 N.Y. Sess. Laws ch. 58 (S. 7508-B), Article VII, Part II. The FLFLPA extends wage and hour protections for farm laborers, including mandatory days of rest and overtime provisions and eliminating the exclusion of farm laborers from the General Minimum Wage Act. 2019 N.Y. Sess. Laws ch. 105, §§ 4, 6, 15 (codified at N.Y. Lab. Law §§ 161(1); 163-a; 651). It also extends labor-relations protections to farm laborers under the State Employment Relations Act. N.Y. Lab. Law Article 20 (§§ 700-718). This includes the right of farm laborers to self-organize to form, join, or assist in labor organizations, to bargain collectively, and to engage in concerted activities, with certain limitations. 2019 N.Y. Sess. Laws ch. 105, §§ 17-21 (codified at N.Y. Lab. Law §§ 701(2)(b); 702-b; 703; 704; 705); *see also* 704-(b)(1) (prohibiting farm laborers or employee organizations from striking).

Employers who violate certain provisions of the FLFLPA may face criminal and civil penalties. *See* N.Y. Lab. Law § 680(2) ("[a]ny employer [...] who pays [...] any employee less than the wage applicable under this article shall be guilty of a misdemeanor

---

[2] For further discussion of the legislative history of the Act, the Court refers to Judge Vilardo's Decision and Order (Dkt. No. 31, pgs. 2-5) and prior proceedings.

and upon conviction be punished by a fine [of fifty to five hundred dollars,] by imprisonment [of ten to ninety] days or by both such fine and imprisonment"); N.Y. Lab. Law § 680(3) ("[a]ny employer […] who fails to keep the records required under this article […] shall be guilty of a misdemeanor […] and punishable by a fine of [fifty dollars to five hundred dollars]"); N.Y. Lab. Law § 681(1) (an employee who is paid less than the wage to which he is entitled may recover in a civil action the amount of such underpayments, together with costs and reasonable attorney fees, as well as liquidated damages equal to twenty-five percent of the total underpayment if the underpayment was willful). N.Y. Lab. Law § 681(2) (the commissioner may bring any legal action necessary to collect a claim on behalf of any employee who was underpaid). Further, the State Public Employment Relations Board (PERB) is "empowered and directed […] to prevent any employer from engaging in any unfair labor practice" against farm laborers, including through awards of backpay and reinstatement of wrongly terminated employees. N.Y. Lab. Law § 706(1) and (3). "Unfair labor practices" include, *inter alia*, employer interference with union formation, existence, or administration or discouraging of employee participation in union activities. N.Y. Lab. Law § 704(1)-(3); 704-b(2)(c).

Importantly, the Act defines a "farm laborer" as "any individual engaged or permitted by an employer to work on a farm." 2019 N.Y. Sess. Laws ch. 105, § 3(c). Excluded from that definition (and thus, excluded from the FLFLPA's wage-and-hour provisions and union provisions) are all "[m]embers of an agricultural employer's immediate family who are related to the third degree of consanguinity or affinity, […] if

6

they work on a farm out of familial obligations, and are not paid wages, or other compensation based on their hours or days of work." N.Y. Labor Law §§ 2(18); 701(3)(c).[3]

*Plaintiffs' Challenges*

Plaintiffs make several arguments in support of their claim that the FLFLPA is unconstitutionally vague and contradictory. First, they allege that the Act does not define "familial obligations" and, as a result, forces farmers and family members to speculate as to the meaning of the term in determining whether a family member can be exempted from the Act's overtime and day of rest provisions. (Dkt. No. 35, ¶ 74). Plaintiffs allege that the FLFLPA "forces a farm to pay overtime to family members due to the risk of criminal penalties" and risk of owing back-pay. (*Id.* at ¶ 74, 77). Next, they allege that a conflict in the law exists because family members who are deemed employees for wage-and-hour provisions are then also entitled to engage in union organizing efforts and collective bargaining with the farm along with other workers. (*Id.* at ¶ 76). They assert that a family member employee who participates in union activities, in a manner that opposes a union, may result in a farm owner being charged with unfair labor practices. ("This puts farm family members at odds with one another, and puts farms owners at risk of violating either the wage provisions or collective bargaining provisions.") (*Id.*). Last, plaintiffs allege that the Act's express prohibition on strikes is contradictory to general language in N.Y. Labor Law § 713, which provides that "[n]othing in this Article shall be construed so as to interfere with, impede or diminish in any way the right of employees to strike." (*Id.* at ¶ 78).

---

[3] As originally enacted, the FLFLPA's minimum labor standards and collective-bargaining rights did not apply to "the parent, spouse, child, or other member of the employer's immediate family." 2019 N.Y. Sess. Laws ch. 105, § 3(c). The definition was expanded and changed by the 2020 amendments to the Act.

7

*Ripeness*

Defendants contend that the Court should decline to exercise jurisdiction because plaintiffs' claims are not ripe for judicial determination. "Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. A hypothetical or abstract dispute does not present a case or controversy." *Marchi v. Board of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999). For a case to be deemed justiciable under Article III, it must be ripe. *Id.* The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). This implicates two distinct jurisdictional criteria. "Constitutional ripeness is a doctrine that, like standing, is a limitation on the power of the judiciary. It prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Nat'l Org. for Marriage v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003)). A case lacking prudential ripeness means that it "will be *better* decided later and that the parties will not have constitutional rights undermined by the delay." *Id.*

Here, plaintiffs have not been charged with any violation of the law, making this a "pre-enforcement" or "facial," rather than an "as-applied," challenge to the statute. *See New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015). Facial challenges are disfavored for several reasons. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008). First, such claims rest on speculation, and thus raise the risk of premature interpretation of statute on the basis of factually barebones records. *Id.* (internal quotations omitted). Second, they run contrary

8

to the "fundamental principal of judicial restraint" on deciding constitutional law questions beyond what is necessary. *Id.* Last, facial challenges "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* "A facial challenge to a legislative Act is [...] the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

"Where a party seeks to challenge a statute or policy prior to its enforcement, the ripeness doctrine requires that the challenge grow out of a 'real, substantial controversy between parties' involving a 'dispute definite and concrete.'" *Marchi*, 173 F.3d at 478 (quoting *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979)). Although one does not have to await the consummation of a threatened injury to obtain relief, a plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. *See Babbitt*, 442 U.S. at 298. This requirement is intended to "prevent the court, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* It is the plaintiff's burden "to allege facts demonstrating that the case presents a justiciable controversy." *Marchi*, 173 F.3d at 478.

Determining whether this case is ripe for adjudication "requires us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). The "fitness" analysis is concerned with whether the issues sought to be adjudicated are contingent on future

events or may never occur. *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008). "Issues have been deemed ripe when they would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *Am. Sav. Bank, FSB v. UBS Fin. Servs.*, 347 F.3d 436, 440 (2d Cir. 2003).

Defendants argue that plaintiffs' lawsuit is unripe because it asks the Court to opine on the constitutionality of the FLFLPA before the PERB or the New York State Department of Labor ("NYSDOL") have promulgated any regulations, commenced any administrative enforcement actions, or issued any administrative determinations. (Dkt. No. 36-1, pg. 11-15). The Court agrees. Simply put, plaintiffs' challenges are speculative, hypothetical, and not fit for determination at this time. Their claims are based on theoretical scenarios concerning how the relevant State agencies may interpret and apply the FLFLPA. Plaintiffs have not demonstrated any certainty of impending harm and, in fact, their concerns may never come to fruition.

Plaintiffs chiefly argue that the wage-and-hour and labor-relations provisions are impermissibly vague in their reliance on the undefined term "familial obligations." Plaintiffs state that they have attempted to obtain clarification about this statutory term, but it remains undefined. They postulate that farmers who misinterpret the meaning of "familial obligations" and exclude a family member from overtime and day-of-rest provisions as a result would be vulnerable to civil and criminal penalties for failing to pay overtime. However, plaintiffs do not point to any administrative enforcement action or factual circumstances that have tested this definition or the application of the Act's provisions.[4]

---

[4] Plaintiffs argue that the NYSDOL has issued guidance, in the form of Frequently Asked Questions ("FAQs") posted on its website, which interprets the Act and fails to clarify the definition of "familial

10

They simply state that farm associations need clarification about the definition of "familial obligation" so that they can advise their member farms about the potential risks and consequences of their pay practices. Plaintiffs speculate that liability could arise if a family-member worker asserts that he or she was not working out of "familial obligation" and therefore was not exempt from the Act's protections for farm laborers. Plaintiffs' allegations uniformly fail to show any substantial controversy or concrete dispute between member farmers and their employees or between farmers and the State agencies who will enforce the law. Their challenge is "open-ended and indefinite," and not well-suited to judicial decision. See Marchi, 173 F.3d at 478 (finding the case not justiciable where agency directive regulating a teacher's off-campus expressive activities was not yet threatened to be applied and review of any future application of the directive would be highly fact-specific).

In denying plaintiffs' motion for a preliminary injunction, the District Court previously addressed ripeness and determined plaintiffs were unlikely to succeed on the merits of their claims.[5] Although Judge Vilardo declined to accept plaintiffs' vagueness argument because it was raised for the first time in reply papers, the Court noted that the argument could not adequately support a facial challenge to the statute. (Dkt. No. 31, pg. 17, n.4). "The plaintiffs have not pointed to a concrete example of a farm employer paying her family-member laborer a salary below the relevant minimum wage where there is any serious question whether the laborer accepts the lesser wages out of 'familial obligation.'"

---

obligation." (Dkt. No. 37-2, Ex. A). This argument is without merit. The FAQs referred to by plaintiffs do not constitute binding authority, see e.g. Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 149 (2d Cir. 2008), and only contain a bullet point recitation of the statutory language regarding immediate family members who are excluded from the definition of "farm laborers." (Id., ¶ 6).
[5] This Court acknowledges that Judge Vilardo's Decision and Order on the motion for preliminary injunction was based upon a different standard than is applicable to this motion to dismiss. Nonetheless, portions of Judge Vilardo's analysis are pertinent to this inquiry.

11

Citing *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d at 265, Judge Vilardo found that plaintiffs had not offered any evidence that their purported concern of unfair prosecution under section 680(2) is plausible. (*Id.*).

Plaintiffs' amended complaint properly raised this argument but still fails to offer anything more than speculation that unfair prosecution might occur in the future. Plaintiffs offer declarations of member farmers attesting to confusion in making salary arrangements for their family member employees and claiming concerns about treating various family members differently. (Dkt. Nos. 2-15; 2-16; 37-3; 37-4). However, none of these statements evidence any legitimate uncertainty about the meaning of the questioned "familial obligation" provision. Indeed, this Court is hard-pressed to think of a plausible scenario in which a family member would agree to work without receiving hourly or daily compensation for a reason other than his or her "familial obligation" to a family farm. Plaintiffs have failed to establish that "no set of circumstances exists under which the Act would be valid," which is required for a pre-enforcement challenge. *See Salerno*, 481 U.S. at 745; *see also Brache v. County of Westchester*, 658 F.2d 47, 51 (2d Cir. 1981) ("[I]f a statute has a core meaning that can reasonably be understood, then it may validly be applied to conduct within the core meaning, and the possibility of such a valid application necessarily means that the statute is not vague on its face."). Further, as previously observed by Judge Vilardo, should an unfair prosecution ever occur, the defendant therein could bring an "as applied" challenge to any vagueness of the "familial obligations" provision at that time.

Next, plaintiffs contend that the statute is unconstitutional because its wage-and-hour provisions and collective bargaining provisions place family members in a

contradictory position to such a degree that plaintiffs' member farmers cannot comply with the demands of the law. Judge Vilardo previously addressed this issue as well within his preliminary injunction decision. Plaintiffs claimed then, as they do now, that these provisions are inconsistent with existing state Labor Law, which constrains employer interference with employee union activity. They assert that the Act creates a dilemma for farm owners because the participation of family-member employees in collective bargaining could create a scenario where farm owners are accused of undue influence or interference in those activities. Expressing doubt that the matter was constitutionally ripe for adjudication, let alone prudentially ripe, the Court opined:

> Until the PERB has an opportunity to reach determinations [about undue influence, interference, and exclusion issues between supervisory and family-member employees from rank-and-file farm laborers in union context], it likely would be, at minimum, imprudent for the Court to decide the issues presented in plaintiffs' motion. The Court "would be forced to guess at how [the agency] might apply [section 705(1)(b)] and to pronounce on the validity of numerous possible applications of the [statute], all highly fact-specific and, as of yet, hypothetical." *Marchi*, 173 F.3d at 478. In other words, the plaintiffs likely neither present "a real of concrete dispute affecting cognizable current concerns of the parties," nor demonstrate that this Court should "becom[e] embroiled in adjudications that may later turn out to be unnecessary." *See Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688 (quoting *Simmonds*, 326 F.3d at 357).

(Dkt. No. 31, pgs. 13-14). Plaintiffs have not demonstrated any change of circumstances since denial of their motion for preliminary injunction that would transform this issue into one ripe for adjudication. As with their vagueness arguments, plaintiffs provide no instances of agency enforcement or interpretation that evidences an actual conflict between these two provisions. They submit only hypothetical logic that farm employers "cannot interference with family member rights to engage in union activities, yet family members may be considered agents of the farm, and therefore prohibited from doing so."

13

The NYSDOL and PERB have not yet had an opportunity to resolve any potential conflict between farmers, family members, and other employees, and they should be afforded the opportunity to do so in the first instance.[6] Therefore, adjudication of this claim is not appropriate at this time.

Plaintiffs' last allegation, to the effect that compliance with the Act cannot be achieved because of a contradiction between its language prohibiting strikes and the general Labor Law provision protecting the right to strike, is unripe for the same reasons discussed above. Further, if the Court were to entertain this claim, it would likely find it without merit. It is a "basic principle of statutory construction that a specific statute [...] controls over a general provision [...] particularly when the two are interrelated and closely positioned." *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981). Accordingly, the highly specific carve-out in the FLFLPA prohibiting strikes and work stoppage among farm laborers would control over the general provision to the contrary.

The Court must also look to the hardship imposed on defendants if it declines to exercise jurisdiction. "In assessing the possible hardship to the parties resulting from withholding judicial resolution, we ask whether the challenged action creates a direct and immediate dilemma for the parties." *Simmonds*, 326 F.3d at 360 (quoting *Marchi*, 173 F.3d at 478). "The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Id.* "A plaintiff must show either prosecution

---

[6] Defendants further point out that plaintiffs' speculative argument relies on an assumption that family-member employees would be placed in the same bargaining unit as other workers. Such an assumption is contrary to N.Y. Labor Law § 705(2) directing that PERB should decide on units appropriate to "ensure to employees the full benefit of their right to self-organization." Defendants also offer that this question has been dealt with by state labor relations agencies routinely in other contexts, generally resulting in the exclusion of supervisory employees and family member employees from the bargaining units of rank-and-file employees. (See Dkt. No. 36-1, pgs. 19-20) (citing State Labor Relations Board decisions). There is no reason to believe that a similar resolution of any conflict would not be successfully applied by the agency in this context as well.

pursuant to the challenged provision or that a sufficiently real and immediate threat of prosecution exists." *Marchi*, 173 F.3d at 478-79. Plaintiffs have shown no threat of harm from the carrying out of Act, apart from speculative claims that they may face future civil or criminal penalties if they misinterpret the meaning of the statutory provisions. As in *Marchi*, plaintiffs here have not demonstrated a credible fear that the State agencies intend to interpret or enforce the Act in a constitutionally impermissible manner.

Plaintiffs rely on *Donohue v. Mangano*, for the proposition that "a party is not required to first 'expose himself to liability before bringing suit to challenge the basis for a threat.'" 886 F. Supp. 2d 126, 151 (E.D.N.Y. 2012) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)). However, *Donohue* is notably distinguishable from the case at bar. There, a County Legislature passed an act overriding its own collective bargaining agreements with employee unions during a fiscal crisis. *See id.*, at 134. The Court found that, even prior to the issuance of any executive orders implementing the law, a constitutional injury occurred in the law's power to unilaterally modify any aspect of an employment contract and strike entire provisions of collective bargaining agreements. *Id.*, at 151. Thus, an immediate challenge to the law was appropriate to prevent irreparable harm and constitutional injury by impairment of contracts. *Id.* at 151-52. Similarly, in *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court held that a declaratory judgment action against a drug manufacturer could proceed because petitioners had already received a letter from respondent threatening to bring a patent enforcement action. *See* 549 U.S. at 121-22. Although the threatened action there was by a private actor, the Supreme Court stressed that a suit may be brought where there is a "genuine threat of enforcement" by the government. *Id.* at 128-29. Here, there is no

similar risk based on the enactment of the FLFLPA. Plaintiffs' member farmers are not coerced into taking an action to avoid prosecution that is comparable to any of the cases cited in *MedImmune*. *Id*. at 129. Plaintiffs' assertion that the law may be vague or contradictory under a hypothetical set of facts fails to show an imminent threat which would support a facial challenge to the Act.

During oral argument, the Court inquired as to plaintiffs' costs associated with complying with the FLFLPA and asked for additional briefing on this subject in light of the Second Circuit's recent decision in *Grand River Enterprises Six Nations, Ltd. v. Boughton*, 988 F.3d. 114 (2d Cir. 2021). In *Grand River*, although plaintiff's constitutional challenges to a Connecticut law conditioning the right to sell cigarettes in the state were rejected on their merits, the Circuit Court found that plaintiff had Article III standing to bring the suit. *Id.*, at 120-21. Grand River had suffered an injury-in-fact by plausibly alleging compliance costs associated with the increased regulatory burden.[7] *Id*. Here, plaintiffs allege that they have devoted "substantial resources and time" to educating their members about how to comply with the Act and "pursuing clarification and relief from State regarding the Act's contradictory terms and requirements." (Dkt. No. 35, ¶ 38-39). After reviewing the parties' submissions, the Court is not persuaded that the compliance costs alleged by plaintiffs render this case ripe for adjudication. The resources expended by the farm associations show that they may be the right parties to bring an action if and when their due process

---

[7] The Court also notes that in *Grand River*, the Second Circuit denied Grand River's request for a declaratory judgment finding it was in compliance with the law's requirement to reconcile federal excise tax and state sales figures. *See* 988 F.3d at 127. It explained, "[i]n the future, should the State of Connecticut rule that Grand River is no longer in compliance with the Reconciliation Requirement, Grand River might be in a position to pursue its potential administrative and judicial remedies in contesting that determination." *Id*. Here, as in Grand River, plaintiffs' concerns of possibly being out of compliance with the law do not make the issue ripe.

concerns materialize. However, despite such costs, judicial determination is imprudent where there is no reasonable certainty that the alleged threat will occur. *See Steffel v. Thompson*, 415 U.S. 452, 475 (1974) ("[F]ederal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a *genuine threat of enforcement* of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied.") (emphasis added); *Babbitt*, 442 U.S. at 298-99 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)) ("When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court.")

In sum, it is clear that plaintiffs' claims are unfit for judicial review at this juncture and that no undue hardship will result from the Court's refusal to adjudicate the matter. The Act will certainly be enforced in the future, but the Court has no advanced knowledge of how the challenged provisions will be interpreted, nor any factual circumstances upon which to apply those determinations. Thus, these claims must be dismissed for lack of subject matter jurisdiction.[8] For these reasons, the Court recommends that defendants' motion to dismiss be granted.

## CONCLUSION

For the foregoing reasons, it is recommended that the District Court grant defendants' motion to dismiss plaintiffs' second amended complaint. (Dkt. No. 36).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

---

[8] Having determined that this action should be dismissed under Rule 12(b)(1), the Court does not find it necessary to reach the Rule 12(b)(6) analysis.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72.  Any requests for an extension of this deadline must be made to Judge Vilardo.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.* See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

DATED:   May 27, 2021
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

18